UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| Clarice Collins, | |
|---|---|
| *Plaintiff*, | Civil No. 3:10cv511 (JBA) |
| v. | |
| University of Bridgeport, | February 16, 2011 |
| *Defendant*. | |

RULING ON MOTION TO DISMISS

In this diversity action, Plaintiff Clarice Collins claims that the University of Bridgeport ("University") violated her rights under Conn. Gen. Stat. §§ 46a–58(a), 46a–60(a), 46a–63, and 46a–64 by discriminating against her on the basis of her age during her time as a student at the University of Bridgeport College of Naturopathic Medicine. The University now moves to dismiss [Doc. # 15] Collins' Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons discussed below, the University's Motion to Dismiss will be granted.

I.  Factual Background

Collins alleges in her Amended Complaint that while a student at the University's College of Naturopathic Medicine, University faculty members treated her differently from her fellow students who were under the age of forty. (Am. Compl. [Doc. # 12] ¶ 8.) Collins, born on December 4, 1955, claims that on May 20, 2009, when she was 54 years old, University faculty member Dr. Mattie permitted Collins "to come to his office to review test results" but informed her that he "was too busy and had to leave," and she would therefore only be able to review one of her tests. (*Id.* ¶¶ 6, 9.) According to Collins, Dr. Mattie

allowed Tineka Johnson, who was under the age of forty, to remain in his office to review all of her tests after Collins left. (*Id.*) Dr. Mattie "required" Collins to return to his office "on two subsequent occasions" but never allowed her "to review all of her prior tests." (*Id.*) Collins learned on August 6, 2009 that Dr. Mattie had previously allowed a "classmate named Kingsley," also under the age of forty, "to retake four tests he had missed" but would not allow Collins to retake any tests. (*Id.* ¶ 10.)

Collins further alleges that on August 20, 2009, Dr. Noe, whom Collins does not describe as a faculty member, "stated in front of six other classmates, all under age 40, that she could give [Collins] a poisonous drug and kill her without [Collins] even knowing it." (*Id.* ¶ 11.) Dr. Noe's comment humiliated Collins. (*Id.*) Collins also claims that Lisa Magneth, who was under the age of forty, "was permitted to take extended time to take her remediation exam" on August 26, 2009, but Collins "was not permitted to do so." (*Id.* ¶ 12.)

As a result of the above events, Collins claims that she "suffered severe emotional distress and injury to her professional career, and was required to transfer to a different educational institution to complete her professional training, all to her economic loss." (*Id.* ¶ 13.) In addition, Collins alleges that the University "denied [her] full and equal accommodations in a place of public accommodation because of her age." (*Id.* ¶ 14.)

II. Discussion

The University moves to dismiss Collins' Amended Complaint on the following grounds: (1) Conn. Gen. Stat. § 46a–58(a) does not cover discrimination on the basis of age; (2) Section 46a–60(a) concerns only discriminatory employment practices, and Collins does not claim to be a University employee; (3) Sections 46a–63 and 46a–64 do not provide a private right of action; (4) Collins failed to exhaust her administrative remedies with respect

to her claims under Sections 46a–63 and 46a–64; (5) the University is not a public accommodation under Sections 46a–63 and 46a–64; and (6) Collins has failed to state a claim for age discrimination.

A.   Collins' Section 46a–58(a) Claim

The University argues that the discriminatory practices defined in Conn. Gen. Stat. § 46–58(a) do not extend to discrimination on the basis of age. (Mem. Supp. [Doc. # 16] at 5.) Collins does not allege discrimination on any basis other than her age, and does not dispute in her Brief in Opposition [Doc. # 17] to the University's Motion to Dismiss that Section 46–58(a) does not apply to age discrimination.

Section 46–58(a) defines as discriminatory practice any deprivation of rights, privileges, or immunities "on account of religion, national origin, alienage, color, race, sex, sexual orientation, blindness, or physical disability." It does not mention age. Section 46a–58(a) does not apply to forms of discrimination that are not within the purview of its plain language. *Comm'n on Human Rights & Opportunities v. Truelove & Maclean, Inc.*, 238 Conn. 337, 357 (1996). Age discrimination is therefore not a viable claim under Section 46–58(a) and because Collins' only stated basis of discrimination is that the University treated her "differently from her fellow students who were under the age of forty," (Am. Compl. at ¶ 8), her claim under Conn. Gen. Stat. § 46–58(a) is dismissed.

B.   Collins' Section 46a–60(a) Claim

The University similarly argues that Collins has not stated a viable claim for relief under Conn. Gen. Stat. § 46a–60(a) because that Section applies only to discriminatory actions taken in an employment relationship, and Collins claims only that she attended the University College of Naturopathic Medicine as a student and does not claim that she

3

worked for the University. (Mem. Supp. at 6.) As with her Section 46a–58(a) claim, Collins does not dispute the University's characterization of Section 46a–60(a) and does not argue in her Brief in Opposition that the Section applies to her as a student rather than employee.

Section 46a–60 prohibits "[d]iscriminatory employment practices" and by its terms, Section 46a–60(a) defines "discriminatory practice" with reference to employers, employment agencies, and labor organizations. The Amended Complaint specifies that "[a]t all times mentioned herein, the plaintiff was a student at the University of Bridgeport College of Naturopathic Medicine." (Am. Compl. ¶ 7.) Nowhere in the Amended Complaint does Collins claim that she and the University had any manner of employee–employer relationship. Without this relationship, Section 46a–60(a) does not apply to Collins' age discrimination claims, and her claim under Conn. Gen. Stat. § 46a–60(a) is therefore dismissed.

### C. Collins' Claims Under Sections 46a–63 and 46a–64

Collins claims that through its actions, the University violated Conn. Gen. Stat. §§ 46a–63 and 46a–64 by denying her "full and equal accommodations in a place of public accommodation because of her age." (Am. Compl. ¶ 14.) It is a prohibited discriminatory practice under Section 46a–64(a) "[t]o deny any person within the jurisdiction of this state full and equal accommodations in any place of public accommodation . . . because of . . . age" and "to discriminate, segregate or separate on account of . . . age." Section 46a–63 defines "place of public accommodation" as "any establishment which caters or offers its facilities or goods to the general public." The University argues that Collins failed to exhaust her administrative remedies with respect to these claims; that Section 46a–64 does not provide

4

a private right of action; that the University is not a place of public accommodation; and that Collins has failed to state a claim for age discrimination under these Sections.

*1. Failure to Exhaust Administrative Remedies*

To maintain an action for discriminatory practices under Conn. Gen. Stat. §§ 46a–58 through 46a–81, a plaintiff must first exhaust her administrative remedies. *See Sullivan v. Bd. of Police Comm'rs*, 196 Conn. 208, 215–16 (1985); *see also O&G Indus., Inc. v. Planning and Zoning Comm'n*, 232 Conn. 419, 425 (1995) ("It is a well settled principle of administrative law that, if an adequate administrative remedy exists, it must be exhausted before the Superior Court will obtain jurisdiction to act in the matter." ). Read together, Conn. Gen. Stat. §§ 46a–82, 46a–83, 46a–83a, 46a–100, and 46a–101 require the timely filing of a complaint alleging discriminatory practices with the Connecticut Commission on Human Rights and Opportunities (CHRO); if the CHRO issues a release of jurisdiction, only then may the complainant bring a judicial action claiming those discriminatory practices under Sections 46a–58 through 46a–81. *See Sullivan*, 196 Conn. at 215–16.[1] If a plaintiff

---

[1] Conn. Gen. Stat. § 46a–82(a) reads in part:

Any person claiming to be aggrieved by an alleged discriminatory practice . . . may, by himself or by such person's attorney, make, sign and file with the commission a complaint in writing under oath, which shall state the name and address of the person alleged to have committed the discriminatory practice, and which shall set forth the particulars thereof and contain such other information as may be required by the commission.

Conn. Gen. Stat. § 46a–83(b) reads in part:

Within ninety days of the filing of the respondent's answer to the complaint, the executive director or the executive director's designee shall review the file. . . . If the executive director or the executive director's designee determines that the complaint fails to state a claim for relief or is frivolous on

files a complaint in court without having exhausted her administrative remedies through the procedures outlined in these Sections and without, therefore, having received a release of jurisdiction from the CHRO, the district court may dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. *Pleau v. Centrix, Inc.*, 501 F. Supp. 2d 321, 327–38 (D. Conn. 2007) (citing *Sullivan*, 196 Conn. at 215).[2]

---

> its face, that the respondent is exempt from the provisions of this chapter or that there is no reasonable possibility that investigating the complaint will result in a finding of reasonable cause, the complaint shall be dismissed.
>
> Conn. Gen. Stat. § 46a–83a(a) reads in part:
>
> If a complaint is dismissed pursuant to subsection (b) of section 46a–83 . . . and the complainant does not request reconsideration of such dismissal . . . the executive director of the commission shall issue a release and the complainant may, within ninety days of receipt of the release from the commission, bring an action in accordance with sections 46a–100 and 46a–102 to 46a–104, inclusive.
>
> Conn. Gen. Stat. § 46a–100 reads in part:
>
> Any person who has timely filed a complaint with the Commission on Human Rights and Opportunities in accordance with section 46a–82 and who has obtained a release from the commission in accordance with section 46a–83a or 46a–101, may also bring an action in the superior court for the judicial district in which the discriminatory practice is alleged to have occurred or in which the respondent transacts business.

Conn. Gen. Stat. § 46a–101(a) reads: "No action may be brought in accordance with section 46a–100 unless the complainant has received a release from the commission in accordance with the provisions of this section."

[2] Collins argues in her Brief in Opposition that "failure to exhaust administrative remedies is not a jurisdictional defect and ordinarily cannot be raised by a motion to dismiss." (Opp'n at 5.) Her reliance on *Spector v. Board of Trustees*, 463 F. Supp. 2d 234,

Exhaustion does not, however, require "precise pleading"; a plaintiff need not use precise terms to classify the type of discrimination alleged before the administrative agency as long as the facts alleged give the agency "adequate notice to investigate discrimination on [all] bases." *Deravin v. Kerik*, 335 F.3d 195, 202–03 (2d Cir. 2003) (holding that "the absence of an explicit reference to race discrimination in Deravin's EEOC complaint" did not mean that he failed to exhaust his race discrimination claim where his factual allegations concerning national origin discrimination gave sufficient notice to the EEOC to investigate racial discrimination as "race and national origin discrimination may substantially overlap or even be indistinguishable depending on the specific facts of a case"). If a discrimination claim is not explicitly raised in an administrative complaint, but is nonetheless "reasonably related" to the allegations of the complaint such that it is within "the scope of the [agency] investigation which can reasonably be expected to grow out of the charge of discrimination," the failure to explicitly raise it is not a failure to exhaust. *Gomes v. Avco Corp.*, 964 F.2d 1330, 1334 (2d Cir. 1992) (citations omitted) (in plaintiff's claim of employment

---

244–45 (D. Conn. 2006), is misguided, as it did not concern whether a failure–to–exhaust challenge was appropriately raised in a motion to dismiss, but whether that challenge, as an affirmative defense, was subject to equitable tolling, a question that the court declined to decide on a motion to dismiss. *Id.* at 246. Although the Second Circuit has held that failure to exhaust administrative remedies is not a jurisdictional defect and is therefore subject to equitable tolling, *see Fernandez v. Chertoff*, 471 F.3d 45, 58–59 (2d Cir. 2006), a failure–to–exhaust challenge is nonetheless properly raised in a motion to dismiss. *See Pleau*, 501 F. Supp. 2d at 328; *Gibson v. State of Connecticut*, No. 3:05-CV-1396(JCH), 2006 WL 1438486, at *3 n.2 (D. Conn. May 23, 2006) ("Even if the failure to exhaust is characterized as an affirmative defense, it may be considered on Rule 12(b)(6) motion, under the Rule 12(b)(6) standards, because the facts relevant to the defense appear on the face of the Complaint.") (citations omitted). Equitable considerations may, in some circumstances, necessitate waiving exhaustion requirements, *see Fernandez*, 471 F.3d at 58, however Collins makes no such claim here. The University's failure–to–exhaust challenge is accordingly properly considered at this stage.

discrimination on the basis of his Portugese heritage, "an investigation of [his] disparate impact claim would reasonably have flowed from an investigation of his disparate treatment claim"). The Second Circuit has recognized this "allowance of loose pleading" only in the context of employment discrimination charges, reasoning that such charges "frequently are filled out by employees without the benefit of counsel" and that a larger–scope investigation can reasonably be expected to grow out of a charge of employment discrimination. *Butts v. City of New York Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1402 (2d Cir. 1993), superseded by statute on other grounds as recognized in *Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684 (2d Cir. 1998); *see also Deravin*, 335 F.3d at 201–03.

By failing to raise her Section 46a–63 and 46a–64 public accommodations claims in her CHRO complaint, Collins failed to exhaust her administrative remedies with respect to those claims. As Collins concedes, she brought her CHRO complaint under only Sections 46a–58(a) and 46a–60(a) and did not mention Sections 46a–63 or 46a–64 or public accommodations anywhere in her affidavit to the CHRO. (*See* CHRO Compl., Ex. A to Mem. Supp.; Opp'n [Doc. # 17] at 4.) Unlike in *Deravin*, where both race and national origin discrimination "would fall within the reasonable scope" of the EEOC's investigation because "the specific facts alleged by a plaintiff in his or her EEOC complaint may suggest both forms of discrimination," 335 F.3d at 202 & n.5, Collins is not alleging different forms of employment discrimination; her lawsuit alleges an entirely different kind of discrimination—discrimination in a place of public accommodation, which her complaint before the CHRO did not encompass. Her affidavit to the CHRO complains "I have been treated differently from my fellow students who are under the age of forty," but she cites

only Sections 46a–58(a) and 46a–60(a), and her affidavit contains nothing to suggest that she claimed discrimination by a place of public accommodation rather than an employer.

It is equally clear from the CHRO's Merit Assessment Review of Collins' claim against the University that the scope of the CHRO's analysis did not contemplate the existence of any claim of age discrimination by a place of public accommodation. The CHRO found that Collins "was/is not a [University] employee and as such the complaint as filed under the cited statutes, fails to state a claim for which relief . . . can be granted." (Ex. B. to Mem. Supp.) Because the CHRO focused exclusively on the fact that Collins did not work for the University, the scope of the CHRO's investigation could not reasonably have been expected to include whether the University was a place of public accommodation and whether, as such, it discriminated against Collins on the basis of her age. *See Deravin*, 335 at 201–02; *Gomes*, 964 F.2d at 1334. Because Collins' affidavit to the CHRO clearly indicates that at the time of her CHRO complaint she was "represented by Attorney John R. Williams" (Ex. A to Mem. Supp.) and there is no record that she made any effort to amend or correct her CHRO complaint after the CHRO issued its ruling, the "allowance of loose pleading" principle is inapplicable. *See Butt*, 990 F.2d at 1402.[3]

Because Collins failed to allege public–accommodation discrimination under Sections 46a–63 and 46a–64, and her allegations of employment discrimination under 46a–58 and 46a–60 are not "reasonably related" to claims of discrimination in public

---

[3] Collins' counsel at oral argument characterized the failure to allege discrimination by a place of public accommodation under Sections 46a–63 and 46a–64 as a "scrivener's error." A clerical error, made by experienced counsel, is not within the ambit of the "allowance of loose pleading" for unrepresented employees envisioned in *Butt*, particularly given the failure to amend or correct this error after issuance of the CHRO dismissal.

accommodations, she failed to exhaust her administrative remedies prior to filing her Complaint in federal court, and her claims under Conn. Gen. Stat. §§ 46a–63 and 46a–64 are dismissed.

## 2. *Private Right of Enforcement Under Section 46a–64*

Conn. Gen. Stat. § 46a–64(c) describes the enforcement mechanism for violations of Section 46a–64: "Any person who violates any provision of this section shall be fined not less than twenty–five dollars or more than one hundred dollars or imprisoned not more than thirty days, or both." Section 46a–64 contains no mention of any private right of action anywhere in its text.

"[T]here exists a presumption in Connecticut that private enforcement does not exist unless expressly provided in a statute. In order to overcome that presumption, the plaintiff bears the burden of demonstrating that such an action is created implicitly in the statute." *See Provencher v. Town of Enfield*, 284 Conn. 772, 777–78 (2007) (Conn. Gen. Stat. § 22–331(a), which concerns the appointment of municipal animal control officers, does not expressly mention a private right of action and thus does not confer a private right of action). To overcome the presumption against private enforcement, Collins cites to *Corcoran v. German Soc. Soc'y Frohsinn, Inc.*, in which the Connecticut Appellate Court reversed judgment in favor of the defendant and against an individual who had alleged gender discrimination by a public accommodation in violation of Section 46a–64 on the ground that the lower court applied an improper legal standard for public accommodation but did not explicitly address whether Section 46a–64 conferred a private right of action. 99 Conn. App. 839, 840 (2007). Collins argues that *Corcoran* demonstrates the Connecticut Appellate Court's implicit recognition that Section 46a–64 provides a private right of

10

enforcement. (*See* Opp'n at 4.) The University counters that the court in *Corcoran* "was not presented with and therefore did not consider the argument . . . that section 46a–64 does not provide for a private right of action." (Reply [Doc. # 18] at 2.)

Because the Court will dismiss Collins' claims under Sections 46a–63 and 46a–64 for failure to exhaust administrative remedies, however, it does not reach the private enforcement issue, and will leave any decision on whether a private right of enforcement exists for eventual state appellate court consideration.[4]

### 3. *The University's Public Accommodation Status*

In moving to dismiss Collins' public accommodation claims, the University argues that even if Sections 46a–63 and 46a–64 confer a private right of enforcement, and even if Collins exhausted her administrative remedies with respect to her claims under those Sections, she has nonetheless failed to state a claim on which relief can be granted because the University is not a place of public accommodation subject to Sections 46a–63 and 46a–64.

---

[4] Although *Corcoran* adjudicated a private suit under Section 46a–64, the Connecticut Appellate Court has not addressed the private enforcement issue, and each Connecticut Superior Court case addressing the issue has concluded that Section 46a–64 does not provide a private right of action. *See Smith v. New Horizon Computer*, 47 Conn. L. Rptr. 311 (Conn. Super. Ct. 2009) (Section 46a–64 "was meant only to be enforced through fines or imprisonment, . . . Connecticut's public accommodation statute does not provide for either an express or implied, private cause of action under § 46a–64(a)(1) and (2)"); *Batiste v. Soundview Med. Assocs., LLC*, No. CV065001278, 2008 WL 1105247, at *5 (Conn. Super. Ct. March 25, 2009) (Section 46a–64 "has been found to be penal in nature on several occasions and not to afford a private right of action"); *McPhail v. City of Milford*, No. 054506S, 1999 WL 126796, at *3 (Conn. Super. Ct. Feb. 25, 1999) (General Statutes §§ 46a–64(a)(1) and 46a–64(a)(2) "have been found to be penal in nature and not to afford a private cause of action"); *Wright v. City of Hartford*, No. CV 970570863S, 1998 WL 83670, at *3 (Conn. Super. Ct. Feb. 13, 1998) ("There is no statutory authorization to bring private actions based on a violation of [Section 46a–64].").

Conn. Gen. Stat. § 46a–63(1) defines "place of public accommodation, resort or amusement" as "any establishment which caters or offers its services or facilities or goods to the general public, including, but not limited to, any commercial property or building lot, on which it is intended that a commercial building will be constructed or offered for sale or rent." The Supreme Court of Connecticut has declined "categorical judgment" as to what types of establishments are or are not public accommodations: "[C]overage under the statute depends, in each case, upon the extent to which a particular establishment has maintained a private relationship with its own constituency or a general relationship with the public at large. So viewed, the question of coverage is a question not of law but of fact." *Quinnipiac Council, Boy Scouts of Am., Inc. v. Comm'n on Hum Rights & Opportunities*, 204 Conn. 287, 300 (1987). In considering whether a plaintiff has been discriminatorily denied accommodations, the Court must "inquire into specific circumstances" and focus "equally on the particular opportunity, the particular position, rather than on access to an organization or an industry as a whole." *Id.*

Because this fact–specific inquiry is ill–suited to a motion to dismiss, and because the Court will dismiss Collins' public accommodation discrimination claims on other grounds, the Court does not reach the issue of whether the University may be a place of public accommodation.

### *4. Collins' Allegations of Discriminatory Conduct*

The University also argues that Collins' Amended Complaint presents only conclusory allegations of age discrimination that do not affirmatively link the alleged actions of University faculty with age–based discrimination and fail to state a plausible discrimination claim that satisfies the *Iqbal* pleading standard. (*See* Mem. Supp. at 12–13.)

However, because the Court will dismiss Collins' claims under Sections 46a–63 and 46a–64 for her failure to exhaust, the Court will not address this issue.

IV.   Conclusion

For the reasons stated above, the University's Motion to Dismiss [Doc. # 15] is GRANTED.  The Clerk is directed to close this case.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 16th day of February, 2011.